UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE  DIVISION

| | |
|---|---|
| Fontenette | Civil Action No. 6:11cv00584 |
| Versus | Judge Tucker L. Melançon |
| Blue Marlin Services LLC, et al | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant, Cal Dive Offshore Contractors, Inc. ("Cal Dive"), [Rec. Doc. 68] and plaintiff, John Fontenette's, memorandum in opposition to Cal Dive's motion [Rec. Doc. 75], as well as a Motion For Summary Judgment filed by defendant, Apache Corporation ("Apache"), [Rec. Doc. 69], and plaintiff, John Fontenette's, memorandum in opposition to Apache's motion [Rec. Doc. 74].  For the reasons that follow both motions will be **GRANTED**.

### I.   FACTUAL BACKGROUND

On October 4, 2009, plaintiff was employed by Blue Marlin Services of Acadiana L.L.C. ("Blue Marlin") as a galley hand.  Blue Marlin assigned plaintiff to work aboard a pipelay/bury barge, M/V BRAVE ("the BRAVE"), owned and operated by Cal Dive and located at Eugene Island 296B, offshore Louisiana. *R. 69*.  The vessel was chartered to Apache pursuant to an Offshore Installation Contract between Apache and Cal Dive dated September 23, 2009, for the purpose of installing

a pipeline owned by Apache. Blue Marlin was hired by Cal Dive and working aboard the BRAVE pursuant to a Master Service Contract between the two companies dated October 9. 2006.

Plaintiff filed this action on April 13, 2011 against Apache and Blue Marlin. *R. 1, Plaintiff's Complaint*. On May 24, 2011 plaintiff amended his Complaint to revise Apache's name. *R. 5, First Amended Complaint*. On May 31, 2011 plaintiff again amended his Complaint to add Cal Dive International, Inc. as a defendant. *R. 9, Second Amended Complaint*. On October 7, 2011, plaintiff filed a Third Amended Complaint to correct Cal Dive's name. *R. 28*. In his complaint and amended complaints, plaintiff alleged that while working on the BRAVE, on October 4, 2009, he was injured when he fell off of the top rung of a three-foot step ladder, which was owned and in the care and custody of Apache and/or Blue Marlin and/or Cal Dive, while he was rearranging pantry shelves in rough seas. *R. 1, Plaintiff's Complaint, ¶¶ 6-8; R. 28, Third Amended Complaint, ¶ 7*. Plaintiff further alleged that Apache and/or Blue Marlin and/or Cal Dive knew or had reason to believe that the ladder was defective in rough weather for the tasks assigned to him and that Apache and/or Blue Marlin and/or Cal Dive was/were negligent by failing to assign another worker to assist plaintiff by steadying or bracing plaintiff and/or the ladder, and that such negligence was the proximate cause of his injuries. *Id. at ¶¶ 7-10*.

Blue Marlin filed a motion for summary judgment seeking dismissal of plaintiff's Jones Act, unseaworthiness and maintenance and cure claims against Blue Marlin. *R. 52*. Cal Dive and Apache also filed a joint motion for partial summary judgment seeking dismissal of the same claims. *R. 58.* On May 30, 2012, the Court granted Blue Marlin's motion for summary judgment, resulting in all of plaintiff's claims against Blue Marlin being dismissed with prejudice. *R. 64, 65*. The Court also granted Apache and Cal Dive's partial motion for summary judgment and dismissed plaintiff's Jones Act claims, including his maintenance and cure claims, against Apache and Cal Dive. *Id.* Thus, plaintiff's only remaining claims are against Apache and Cal Dive for vessel unseaworthiness and negligence under the general maritime law.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict

3

if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c) *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

## II. LEGAL ANALYSIS

The remaining defendants, Apache and Cal Dive move for summary judgment as to plaintiff's unseaworthiness claims against them. Apache also moves for summary judgment asserting that there is no evidence of an independent act of negligence on its part that caused or contributed to plaintiff's alleged accident. Cal Dive further moves for summary judgment on the basis that plaintiff's alleged injuries were not caused by the negligence of the vessel, the BRAVE. As such, Cal Dive avers that it is not liable to plaintiff for his injuries under the Longshore & Harbor

Workers' Compensation Act, 33 USCA § 905(b), and that, as a matter of law, plaintiff's claims against it should be dismissed.

Plaintiff responds in his memorandum in opposition to Apache's motion that the Court should deny the motion based on Apache's duty to approve the equipment, i.e. the ladder, used on Cal Dive's vessel. *R. 74*. Plaintiff opposes Cal Dive's motion, arguing that genuine issues of material fact exist regarding Cal Dive's breach of its turnover duty to plaintiff by supplying him with a "defective" ladder as well as Cal Dive's duty to warn of the hazard, i.e the "defective" ladder. *R. 75*.

### 1. Unseaworthiness Claims Against Apache and Cal Dive

In its May 30, 2012 Memorandum Ruling and Judgement, the Court granted Apache's and Cal Dive's motions, and held that plaintiff was not a seaman under the Jones Act. *R. 64*; *65*. The Court's conclusion that plaintiff was not a seaman at the time he sustained his injury forecloses plaintiff's general maritime law claims for unseaworthiness. *Chandris, Inc. v. Latis*, 515 U.S. 347, 354 (1995) (describing negligence under the Jones Act together with the general maritime law causes of action for unseaworthiness and maintenance and cure as "the trilogy of heightened legal protections (unavailable to other maritime workers) that seamen receive"). Therefore, the Court will grant summary judgment to both Apache and Cal Dive on plaintiff's claims against them.

### 2. Liability Against Apache

Plaintiff asserts that Apache is liable in negligence for his alleged injury resulting from the allegedly defective ladder under Louisiana's general negligence provision, Civil Code article 2315. It is undisputed that Apache chartered the BRAVE pursuant to an Offshore Installation Contract ("OIC") between Apache and Cal Dive. *R. 69-5.* "[T]he responsibility of the time charterer is generally determined by its charter agreement with the vessel owner." *Hudson v. Schlumberger Technology Corp.*, 452 Fed.Appx. 528, 536, (5th Cir. 2011)(citing *Kerr–McGee v. Ma–Ju Marine Servs., Inc.*, 830 F.2d 1332, 1340 (5th Cir.1987)).

Plaintiff alleges that Section 4.1, "Independent Contractor," under the OIC, "would imply [Apache had] some operational control over the contractor's acts." Section 4.1, however, provides that Cal Dive was an independent contractor who retained the "complete and authoritative control as to the details of doing the Work" and remained "responsible for all of the actions of all of the subcontractors of [Cal Dive] and the staff of such subcontractors." *R. 69-5.* Further, pursuant to the Master Service Contract ("MSC") under which plaintiff's employer, Blue Marlin, was retained, "Subcontractor [Blue Marlin] is and shall remain an independent contractor as to all such work performed hereunder, all of which must meet with [Cal Dive's]

7

approval and [Cal Dive] specifically reserves to itself and to any other party whom [Cal Dive] may designate the right to inspect all such work in progress at all reasonable times."[2] *R. 69-7; 69-8*.

"Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir.1987). It is well-settled that a principal, such as Apache, "cannot be liable for injuries resulting from the negligent acts of an independent contractor, ... unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter v. Texaco, Inc.*,117 F.3d 909, 912 (5th Cir. 1997). It is axiomatic that plaintiff's actions did not fall in the limited ultrahazardous category.[3] Therefore, the only issue relevant to plaintiff's negligence claims is whether Apache retained control over or authorized any of Blue Marlin's activities that resulted in plaintiff's injuries. *Id.* "Testing for this operational control exception

---

[2] The original MSC was made on October 9, 2006 between Blue Marlin and Helix Energy Solutions Group Inc. *R. 69-7*. On March 9, 2007 a Contract Adoption Agreement was executed between Cal Dive and Blue Marlin which operated "as an antonomous, stand-alone agreement between [Blue Marlin] and Cal Dive ["one of Helix Energy Solutions Group, Inc's affiliated entities"]. *R. 69-8*.

[3] The "ultrahazardous" label is limited to those activities which present "a risk of harm that cannot be eliminated through the exercise of due care." *Ainsworth* at 550.

first requires an examination of whether and to what extent the right to control work has been contractually reserved by the principal." *Id*.

Plaintiff also contends that the OIC required that Apache approve the equipment used in the work of Blue Marlin, Cal Dive independent contractor. *R. 74.* The OIC, however, specifically disavows any right of Apache to direct Cal Dive's work and specifically provides that Cal Dive "shall have the complete and authoritative control as to the detail of doing the Work." *R. 69-5*.

Moreover, the record contains the affidavit of Michael Barre, the Apache Senior Construction manager overseeing the pipe laying project at issue. *R. 69-6, Aff. Of Barre.* Barre states that Apache did not supervise, instruct or provide any orders regarding the step-by-step details of the work being done on the job by any independent contractors, specifically including Cal Dive and Blue Marlin and that Apache did not exercise direct control over any Cal Dive or Blue Marlin employees as to the details of the work they were to perform. *Id.* Barre also states that, as independent contractors, Cal Dive and Blue Marlin were responsible for the actual performance and superintendence of their own work, under the control and direction of their own employees as to the manner in which the work was performed, the inspection of their equipment, the equipment to be used for each task, and their choices among safe work methods. *Id.*

9

Plaintiff's deposition testimony supports Barre's statement in that he testified he never talked to an Apache employee, Apache never gave him any orders, Apache personnel was not in the kitchen or pantry at the time of the alleged accident, and he did not talk to anyone at Apache after the alleged accident. *R. 69-9, pp. 234-35*. Nor has plaintiff provided any evidence that Apache exercised operational authority or control over the BRAVE, Cal Dive or Blue Marlin. Accordingly, Apache is entitled to the independent contractor defense and plaintiff's claims against it must be dismissed.

### 3. Liability Against Cal Dive

Section 905(b) of the LHWCA expressly recognizes the right of a covered employee to sue a vessel for injuries sustained as a result of the vessel's negligence. Although § 905(b) requires a vessel owner to exercise "reasonable care under the circumstances," vessel liability is intentionally narrow, as discussed by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). *Scindia* relieves a vessel owner of the automatic duty to inspect or supervise stevedoring operations, and places the primary responsibility for the longshoreman's safety on the stevedore and not the vessel owner.[4]  *Id*. The Fifth Circuit outlined

---

[4] *Scindia* also applies to injury suffered by an independent contractor hired by a shipowner. *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 210 (5th Cir.1984).

three instances where vessel owner liability may still be established in favor of the longshoreman:

> 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
>
> 2) for injury caused by hazards under the control of the ship.
>
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*E.g., Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir.1997) (internal quotations and citations omitted).

In this case, Cal Dive claims that as all of these duties have been fulfilled, it is not liable for plaintiff's injuries, and therefore, summary judgment should be granted. Plaintiff claims in his opposition memorandum that because material issues of fact remain as to the vessel's fulfilment of the turnover duty as well as the failure to intervene in light of Cal Dive's alleged knowledge of the defective ladder, summary judgment should be denied. The Court finds that plaintiff has not raised a material issue of disputed fact that Cal Dive breached any of the three *Scindia* duties.

### *i. The Turnover Duty*

First, Cal Dive did not violate its turnover duty by failing to warn plaintiff of hidden defects. "The 'turnover duty' relates to the condition that an expert and

experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property." *Moore v. M/V Angela*, 353 F.3d 376, 380 (5th Cir.2003). However, "merely proving that an unsafe condition existed at the time of the accident is insufficient to establish liability." *Treadaway v. Societe Anonyme Louis–Dreyfus*, 894 F.2d 161, 166 (5th Cir.1990). More importantly, "[t]he defendant has not breached its duty to turn over a safe vessel if the defect causing injury is open and obvious and one that the longshoreman should have seen." *E.g., Greenwood*, 111 F.3d at 1246 (citations omitted). "If the longshoreman knew of the defect, then it is considered open and obvious." *Id.; see also Scindia*, 451 U.S. at 167, 101 S.Ct. 1614 (a vessel's duty to warn extends to defects unknown to "the stevedore and which would not be obvious to or anticipated by him if reasonably competent in the performance of his work").

Cal Dive cites plaintiff's deposition, asserting that plaintiff's own testimony confirms there were no defects in the ladder. In his March 2, 2012 deposition, plaintiff testified, "[I] tried to balance myself. I grabbed – I grabbed the thing and it came down. I fell off the ladder as it hit the side. The high seas hit the side because it [the barge] was rocking. That's how I fell off of the ladder." *R. 68-4, p. 129.* Plaintiff further testified that he had been using the ladder to organize the pantry for

12

30-40 minutes without incident before he fell. *R. 68-4, Plaintiff's Depo., pp. 136-37.* Finally, when questioned about the condition of the ladder before he fell, plaintiff stated that the ladder did not break and "[t]here wasn't nothing wrong with the ladder." *Id., pp. 236-37.* Cal Dive also cites the deposition of plaintiff's co-worker, Dirk Deshotels, who testified that he had used the ladder prior to the alleged accident and that it was brand new. *R. 68-3, Depo. Of Deshotels, p. 83-85.* Deshotels further stated that he inspected the ladder after plaintiff fell and found no damage to it. *Id. at p. 86.*

In his opposition to defendants' motions, plaintiff attached an affidavit which contradicts his deposition testimony in that it states:

> When [plaintiff] was injured on or about October 4, 2009 on the vessel THE BRAVE in the Gulf of Mexico in rough weather it was solely because the ladder on which [plaintiff] was standing was faulty and unable to support him.

*R. 74-2, (07/25/12 Aff. Of Plaintiff).* "A nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue." *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128 (5th Cir.1992). Thus, the Court will not consider plaintiff's recent affidavit to the extent that it contradicts

13

his prior testimony in order to manufacture a material fact issue. *Doe ex rel. Doe v. Dallas Independent School Dist*, 220 F .3d 380 (5th Cir.2000).

As plaintiff has conceded that he does not attribute his alleged accident to a defect in the ladder or any other equipment or physical condition aboard the BRAVE and has failed to offer even a soupçon of evidence that the ladder was defective, he has failed to raise a material issue based on the first *Scindia* duty.

### ii.  Active Control Duty

As to the second *Scindia* duty—for injury caused by hazards under the control of the ship—plaintiff has not established an issue of disputed material fact. "[A] vessel captain's undisputed general authority regarding the entirety of the vessel does not equate to the 'active or operational' control contemplated by the second *Scindia* duty." *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16–17 (5th Cir.1992) (finding vessel owner lacked active control where crane that caused injury was necessary to the stevedore's work and was being operated by the stevedore). To determine whether a vessel owner retains active control over the contractor's work, the Court considers "whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work." *Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir.1996).

These factors all support Cal Dive's position. Plaintiff stated that Cal Dive gave him no instructions and that it was the Blue Marlin camp boss who instructed him to organize the pantry. *R. 68-4, pp. 128, 235.* Plaintiff further stated that he was working alone in the pantry at the time of the alleged accident and there were no Cal Dive personnel in the vicinity. *Id. at pp. 180, 236.* Deshotels confirmed the foregoing testimony and identified the Blue Marlin camp boss in charge as Dante McMillan. *R. 38-3, pp. 20, 42, 87-88, 102.*

As there is no evidence that Cal Dive exercised active control over the actual methods and operative details of Blue Marlin's or plaintiff's work, plaintiff has failed to establish that Cal Dive violated its "active control duty, the second *Scindia* duty.

### *iii. Duty To Intervene*

The third *Scindia* duty, the duty to intervene when the vessel owner knows of an unreasonably dangerous condition that has developed during the course of the stevedoring operations and it knows that the stevedore, in the exercise of obviously improvident judgment, intends to continue working in the face of the danger and cannot be relied upon to protect its workers, is equally unavailing for plaintiff. *Greenwood,* 111 F.3d at 1249 (citing *Scindia* at 175-76). "This is because, 'The shipowner defers to the qualification of the stevedoring contractor in the selection and

15

use of equipment and relies on the competency of the stevedore company.'" *Id.*(citing *Scindia* at 172).

Plaintiff contends that Cal Dive should have assign another worker to brace plaintiff and/or the ladder during the allegedly "rough weather."[5] Plaintiff, however, has failed to provide any evidence showing that Cal Dive's employees knew plaintiff was using the ladder, much less exercising "obviously improvident judgment" in using it. To make such a showing, the "expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm—even when the stevedore's expertise is taken into account." *Id.* Moreover, the vessel owner is entitled to rely on the contractor's expert judgment as to the safety of its working conditions and whether a condition, although dangerous, is safe enough to permit work to continue. *Id.*

It is undisputed that plaintiff was ordered to stock the pantry by the duty boss of his employer, Blue Marlin. As the Court has found that Cal Dive asserted no control over plaintiff's work and that the ladder was in fact not defective, plaintiff has failed to establish that Cal Dive violated the third *Scindia* duty.

## CONCLUSION

---

[5] Plaintiff has produced nothing more than mere allegations that "rough weather" actually existed at the time of the alleged incident.

Based on the record before the Court, for the foregoing reasons, the Court finds that, as a matter of law: (1) Apache's motion for summary judge must be granted and that plaintiff's claims of unseaworthiness and negligence against Apache will be dismissed with prejudice; and, (2) Cal Dive's motion for summary judgment must be granted and plaintiff's claims of unseaworthiness and vessel negligence against Cal Dive will be dismissed with prejudice.